IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

MYRA CHARLENE HORAN

    Plaintiff,

v.                                                                                  No. 1:22-cv-01153-JDB-jay

CARMA DENNIS MCGEE,
DONALD E. PARISH,
STATE OF TENNESSEE,
CITY OF CAMDEN, TENNESSEE,
COUNTY OF BENTON, TENNESSEE,

    Defendants.

---

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTIONS TO DISMISS**

---

    This case is one of four brought before the Court by Plaintiff. The Magistrate Judge recommends the Court **GRANT** the Motions to Dismiss filed by four of the Defendants and sua sponte **DISMISS** the claims against the remaining Defendant. The genesis of this suit began June 7, 2021, when Plaintiff's claims against eleven Defendants were transferred to this Court from the District of Columbia. *See* Order Transferring Pro Se Case, *Horan v. McGee et al*, 1:21-cv-01102-JDB-jay, Docket Entry "D.E." 3. The Magistrate Judge granted Plaintiff's Motion for Leave to Proceed In Forma Pauperis and screened that Complaint. *Horan*, 1:21-cv-01102-JDB-jay, D.E. 8. On July 6, 2022, the Court dismissed all claims against all Defendants except Defendant Fuqua. *Id*., D.E. 11.

    After that ruling, Plaintiff filed this action on July 15, 2022. D.E. 1. Plaintiff is proceeding pro se but paid the filing fee and is thus not proceeding in forma pauperis. D.E. 5. In the Complaint,

Plaintiff asserts claims against Defendants that were dismissed in the first suit. D.E. 1. However, Plaintiff attempts to assert alternative causes of action. D.E. 1. Counsel for Defendants McGee, Parish, and the State of Tennessee filed a Motion to Dismiss on August 19, 2022. D.E.11. Counsel for the County of Benton filed a Motion to Dismiss on August 22, 2022. D.E. 14. The City of Camden has failed to file a responsive pleading as of the date of this Report and Recommendation.

## I.　　PLAINTIFF'S COMPLAINT

Plaintiff's claims against Defendants relate back to custody decisions made in Tennessee state court regarding her minor child. D.E. 1. In 2016, Plaintiff and the biological father of the minor child obtained a divorce and custody settlement. D.E. 1 at 8. Plaintiff had primary custody at that time. D.E. 1 at 8. In 2018, the parties re-entered custody negotiations and in late 2018 Defendant McGee issued a new custody arrangement. D.E. 1 at 9–10. On August 30, 2019, Defendant Parish ordered Plaintiff to produce the minor child. D.E. 1 at 11.

Plaintiff contends that the judicial process by which she was denied custody was flawed. First, Plaintiff contends Defendants McGee and Parish are not exercising valid, Constitutional judicial authority. D.E. 1 at 15–16. As such, Plaintiff asserts these claims are against Defendants McGee and Parish in their personal capacities, not judicial capacities, and immunity cannot apply. D.E. 1 at 3. Second, because Defendants McGee and Parish are allegedly not valid judicial authorities, their custody decisions deprived her of the right to parent, the right to due process, and amounted to an abuse of process. D.E. 1 at 17–18. Third, there was a contractual agreement between Plaintiff and the other custodial parent that Plaintiff would retain custody of the minor child; the State's decisions to the contrary allegedly amounted to interference with the Constitutional right to contract and tortious interference with Plaintiff's contract. D.E. 1 at 19–20. Fourth, Plaintiff alleges fraud on the part of Defendants to deny her of her Constitutional rights

2

and contractual rights as bargained for previously with the other custodial parent. D.E. 1 at 20–21. In all, Plaintiff raises seven claims. D.E. 1 at 15–21.

## II. PROPOSED CONCLUSIONS OF LAW

### A. Motion to Dismiss Standard

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The court "construes the complaint in a light most favorable to the plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).

However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief . . . .").

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers[] and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted). Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.") (internal quotation marks

omitted) (alteration in original).

The Magistrate Judge's analysis of the plausibility of Plaintiff's complaint follows. In short, there is no claim upon which Plaintiff can plausibly proceed.

### B. Statute of Limitations Has Expired

The court should grant a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) where the statute of limitations has run. *Jones v. Bock,* 549 U.S. 199, 215 (2007). Here, most of Plaintiff's claims should be dismissed on this ground. Plaintiff's Complaint includes state law claims for fraud and tortious interference with contract. D.E. 1 at 15–21 (Claims Three, Four, Five, and Seven). The Complaint also includes claims of Constitutional rights violations. *Id.* (Claims One, Two, and Six).

The statute of limitations in Tennessee for "civil actions . . . brought under the federal civil rights statutes" is one year. TENN. CODE ANN. § 28-3-104. The statute of limitations for fraud and tortious interference with contract under Tennessee state law is three years. TENN. CODE ANN. § 28-3-105.

Reluctantly assuming these are valid claims, the first issue is what date the statute of limitations began to run on Plaintiff's claims. Although state law determines what the statute of limitations is, federal law governs when the statute of limitations begins to run. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). The statute of limitations begins to run "when plaintiff[] knew or should have known of the injury which forms the basis of [her] claim[]." *Ruff*, 258 F.3d at 500 (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991)). Moreover, federal law establishes that "[a] plaintiff has reason to know of [her] injury when [she] should have discovered it through the exercise of reasonable diligence." *Id.* at 501 (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)).

4

In *Sevier*, the Sixth Circuit held that a "person exercising reasonable diligence would expeditiously attempt to determine" their legal rights after a state court adjudicated claims against them. 742 F.2d at 273. The court further highlighted that waiting "over four years" was unreasonable, and a plaintiff "simply . . . [being] ignorant" about their various legal rights was insufficient to toll the statute of limitations. *Id*.

There is nothing to indicate Plaintiff was unaware of these orders after the date of their entry. Pursuant to *Sevier*, Plaintiff cannot claim ignorance of the federal or state law claims she now attempts to assert in an effort to bypass the statute of limitations accrual date. Thus, the statute of limitations began running from the entry of the state court orders of which Plaintiff complains.

Plaintiff's federal and state law claims relate, in part, to the order entered by Defendant McGee on December 27, 2018. D.E. 1 at 10. The one-year statute of limitations as to the federal law claims therefore expired on December 27, 2019. The three-year statute of limitations as to the state law claims expired on December 27, 2021.

Plaintiff's federal law and state law claims relate, in part, to the order entered by Defendant Parish on August 30, 2019. D.E. 1 at 11. The one-year statute of limitations as to the federal law claims expired on August 30, 2020. The three-year statute of limitations as to the state law claims expired on August 30, 2022.

In short, the only claims that survive the statute of limitations are vague allegations of contract interference relating to Defendant Parish. To the best of the Magistrate Judge's ability to read Plaintiff's Complaint in her favor, this leaves Claims Four and Five as remaining against Defendant Parish. D.E. 1 at 18–21. All other claims against all other Defendants should be dismissed as barred by the applicable statute of limitations because Plaintiff did not file this action until July 15, 2022—after the statute of limitations expired. *See* TENN. CODE ANN. § 28-3-104–

105. Therefore, the Magistrate Judge recommends that Claims One, Two, Three, Six, and Seven be **DISMISSED** against all Defendants and Claims Four and Five be **DISMISSED** against all Defendants except Defendant Parish.

### C. Judicial Immunity Applies to Defendants McGee and Parish

Even if Plaintiff's claims survive the applicable statute of limitations, the claims against Defendant McGee and Defendant Parish are barred by judicial immunity. Plaintiff asserts various state and federal claims against Defendants McGee and Parish. D.E. 1 at 10–21. Plaintiff alleges that neither Defendant held valid judicial authority at the time they rendered judgment in Plaintiff's custody proceedings. D.E. at 3–6. Plaintiff argues Defendants McGee and Parish are therefore not entitled to immunity. D.E. at 3.

Judicial immunity is an absolute immunity against money damages. *Wilson v. Todd*, 178 F. Supp. 2d 925, 928–29 (W.D. Tenn. 2001). It protects judges except in cases where the judge acts in the "absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). It applies "even when the judge is accused of acting maliciously and corruptly . . . ." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). The appropriate manner to address judicial errors is on appeal, not through litigation. *Pierson*, 386 U.S. at 554. In short, when a judge has jurisdiction over a case the judge is immune from suit—even when the case is wrongly decided. *Id.*

The first issue is determining whether Defendants McGee and Parish were acting with valid, judicial authority and jurisdiction. Plaintiff makes several bold allegations regarding the validity of the judicial offices held by Defendants McGee and Parish. First, Plaintiff claims there is "no judicial function that allows the State to impair obligations of contract . . . ." D.E. 1 at 3. Second, Plaintiff claims there is "no judicial function that allows a public servant to tear a child from a parent without proving harm to the child or any substantial State interest . . . ." D.E. 1 at 3.

Third, Plaintiff makes a general allegation that because Defendants McGee and Parish were operating as "chancellors" they were not judges. D.E. 1 at 3. None of these arguments are persuasive. Therefore, Defendants McGee and Parish *are* entitled to judicial immunity.

Plaintiff asserts that *no* state judicial authority could impair her private contractual rights. D.E. 1 at 3. Plaintiff is incorrect. State courts do hold the authority to alter private contractual rights, and this is particularly true in the context of family law and child custody disputes. Tennessee state law permits courts to "affirm[], ratif[y], and incorporate[e] . . . an agreement between the parties regarding the division of property" in a divorce decree. TENN. CODE. ANN. § 36-4-11. But the same is not true regarding custody arrangements made privately. The Tennessee legislature specifically conferred on state courts the jurisdiction to make independent determinations of custody based on "the best interest of the child." TENN. CODE ANN. § 36-6-106(a) ("In . . . any . . . proceeding requiring the court to make a custody determination regarding a minor child, the determination *shall* be made on the basis of the best interest of the child." (emphasis added)). The state requires courts to consider various factors such as the stability of the child's relationship with the parents, the parent's prior role as primary caregiver, the needs of the child, and "any other factors deemed relevant by the court." TENN. CODE ANN. § 36-6-106(a). Thus, Plaintiff's first argument is incorrect. Not only *can* the state court alter a privately agreed upon custody arrangement, but the state legislature *mandates* it to ensure the best interests of the child are met. TENN. CODE ANN. § 36-6-106(a).

Plaintiff's second assertion that the state cannot remove a child without appropriate concern for the child's welfare will not bar judicial immunity in this case. Whether the state court's ultimate determination of Plaintiff's fitness as a parent is correct (or incorrect) is not before the court. Instead, the question is whether the state court decisions of Plaintiff's fitness are entitled to

7

judicial immunity. They are. Again, the proper avenue for Plaintiff to argue the merits of whether the state court properly evaluated her fitness as a parent was through appeal in the Tennessee state courts. *Pierson*, 386 U.S. at 554. Even if Defendants McGee and Parish wrongly decided the merits of Plaintiff's parental fitness, they are still entitled to judicial immunity. *Id*.

Plaintiff's third argument that Defendants McGee and Parish acted without jurisdiction because they are merely "chancellors" and not "judges" also fails. D.E. 1 at 3. First, the Constitution of the State of Tennessee provides that the "judicial power of [Tennessee] shall be vested in one Supreme court and in such Circuit, Chancery, and other inferior Courts as the Legislature shall from time to time, ordain and establish . . . ." TENN. CONST. ART. VI, §1. The Tennessee legislature passed a state statute providing that "chancellors . . . shall be elected by the qualified voters of their respective judicial districts . . . ." TENN. CODE ANN. § 17-1-103. The state legislature also bestowed upon chancellors jurisdiction to hear matters of divorce, appointment and removal of guardians, and the adoption of children. TENN. CODE ANN. § 16-11-109–110. Additionally, the state provides that "any circuit judge may also during the sittings of a chancery court . . . take the place of the chancellor on the bench . . . ." TENN. CODE ANN. § 17-2-113.

In order to successfully argue Defendants McGee and Parish are without judicial immunity, Plaintiff needed to make some colorable claim that they acted without jurisdiction. But Plaintiff failed to do so. Plaintiff made no argument that the chancery court is unconstitutional under state law. Plaintiff made no argument that Defendants McGee and Parish were not properly elected under state law. Plaintiff made no argument that the chancery court was without jurisdiction to hear the custody issue. Plaintiff made no argument that Defendant Parish could not sit as Chancellor. Instead, Plaintiff appears to take issue with the label "chancellor." But the state statutes governing these state jurisdictional questions specifically use "chancery" and "chancellor" in these

grants of authority. *See* TENN. CODE ANN. § 17-2-113; *see also* TENN. CODE ANN. § 16-11-109. Regardless of the label, it is evident the state conferred jurisdiction to make custody decisions upon the state chancery court and state chancellors. TENN. CODE ANN. § 16-11-109–110.

More importantly, the Tennessee Supreme Court already answered this question regarding the state chancery court's jurisdiction to hear custody issues. In *Lentz v. Lentz*, the Supreme Court of Tennessee held that the chancery court "has the authority to decree custody of minor children under the control of either of the parties" in a divorce action. 717 S.W.2d 876, 877 (Tenn. S. Ct. 1986). Plaintiff's argument that Defendants McGee and Parish were without jurisdiction to hear custody issues as chancellors is unsupported by Tennessee state law.

Because Defendant McGee and Defendant Parish are entitled to judicial immunity, the Magistrate Judge recommends all claims against Defendants McGee and Parish be **DISMISSED**.

### D. Eleventh Amendment Sovereign Immunity Applies to the State of Tennessee

The Eleventh Amendment to the United States Constitution provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States . . . ." U.S. CONST. amend. XI. "This immunity is far reaching. It bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments . . . by citizens of another state, foreigners or its own citizens." *Thiokol Corp. v. Dep't of Treasury, Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) (citing *Hans v. Louisiana*, 134 U.S. 1, 33 (1980)). This amendment does not protect the state against suits where the "state has itself waived its immunity from federal suit" or "where Congress has abrogated the states' immunity." *Thiokol*, 987 F.2d at 381.

Plaintiff makes no showing that either Tennessee waived its sovereign immunity or that

Congress abrogated the state's immunity. To the contrary, the state has not waived its sovereign immunity. "No court in the state shall have any power, jurisdiction or authority to entertain any suit against the state, or against any officer of the state . . . ." TENN. CODE ANN. §20-13-102(a); *Berndt v. Tennessee*, 796 F.2d 879 (6th Cir. 1986) ("The State of Tennessee has not consented to any such suit expressly or by implication. We are persuaded that section 20-13-102(a) of the Tennessee Code . . . also extends impliedly to suits brought in federal court."). Moreover, Congress has not abrogated the State of Tennessee's immunity or the immunity of its judicial officials. 42 U.S.C. § 1983 (excepting "any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity . . . .").

Plaintiff failed to overcome the vast weight of authority in this area of state sovereign immunity. She gave absolutely no legal authority upon which the Court could consider her claims against the state. The Magistrate Judge therefore recommends the claims against the State of Tennessee be **DISMISSED**.

### E. No Claims Raised Against Benton County, Tennessee or the City of Camden, Tennessee

Plaintiff's Complaint includes Benton County and the City of Camden in the case caption. But the substance of Plaintiff's Complaint includes *no mention* of the county or the city. Because there are absolutely no facts included in Plaintiff's Complaint to support a plausible claim against either Benton County or the City of Camden, the Magistrate Judge recommends the court **DISMISS** these Defendants.

### F. The *Rooker-Feldman* Doctrine Prohibits the Court from Adjudicating Plaintiff's Claims

At bottom, Plaintiff's claims all stem from the adjudication of a custody dispute at the state level. Although Plaintiff raises allegations that her constitutional rights were violated in this

state process, what she ultimately complains of is that the state denied her custody of her minor child without proper justification. D.E. 1 at 15, 18.

But the *Rooker-Feldman* doctrine bars federal courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments . . . ." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *Rooker-Feldman* recognizes concurrent jurisdiction of both state and federal courts. *Exxon*, 544 U.S. at 292 ("When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court."). But what the doctrine protects against is a federal district court acting, in effect, as appellate review of a prior state court decision. *Id.* at 291–92 ("The *Rooker-Feldman* doctrine . . . does not authorize district courts to exercise appellate jurisdiction over state-court judgments." (internal citations omitted)).

Plaintiff's Complaint, in part, asks the court to act as appellate review related to the state court decisions to deny her custody of her minor child. The Complaint provides that Defendants McGee and Parish had before them "no demonstration of unfitness" or "any assertion of danger to the child." D.E. 1 at 15. The proper court for Plaintiff to raise these issues is in Tennessee state court—not federal district court. Based on the *Rooker-Feldman* doctrine, the Magistrate Judge recommends the court **DISMISS** Plaintiff's claims.

### III.     RECOMMENDATION

Based on the forgoing analysis, the Magistrate Judge recommends that all of Plaintiff's claims against all Defendants be **DISMISSED** with prejudice.

Respectfully submitted this 13th day of September, 2022.

                                                **s/Jon A. York**
                                                UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATION MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATION.   28 U.S.C. § 636(b)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**